UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHELTON L. FRAZIER  CIVIL ACTION NO. 11-00778

VERSUS  JUDGE S. MAURICE HICKS JR.

SABINE RIVER AUTHORITY,  MAGISTRATE JUDGE HORNSBY
STATE OF LOUISIANA

**MEMORANDUM RULING**

Before the Court is Defendant Sabine River Authority ("Sabine") and the State of Louisiana's Motion for Summary Judgment. (Record Document 22). Defendants seek dismissal of all the claims brought by Plaintiff Shelton L. Frazier ("Frazier"). Frazier, in proper person, opposes this motion. (Record Document 26). For the reasons that follow, the defendants Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Frazier began employment with Sabine on May 21, 2008. (Record Document 22-1 at 2). His initial position was labeled as an "unclassified" worker. He earned $6.70 per hour and was not eligible for any state benefits. See id. In July of 2008, Frazier applied for, and received, a promotion to the classified position of Civil Service Park Buildings & Grounds Attendant, later to be re-labeled as "Helper." He received a raise to $7.56 per hour and was then eligible to receive state benefits. See id. On January 21, 2009, Frazier received a merit increase and his hourly rate increased to $7.86. He received another merit increase

the next year to bring his pay to $8.17 per hour. (Record Document 22-1 at 3).[1] Frazier resigned on August 25, 2011. (Record Document 22-1 at 2).

On March 16, 2011, Frazier was called into Mike Carr's ("Carr") office. (Record Document 26 at 11). According to Frazier, Carr was upset with Frazier because he "had gone over his head to the Executive Director, Jim Pratt [sic] by sending him the email of his concerns and issues." (Record Document 26 at 11). At this meeting, Carr discussed Frazier's issues with the workplace. One of those issues was the pay rate of Seth Sebastin ("Sebastin"). Sebastin was earning $10.00 per hour as an unclassified worker. (Record Document 26 at 11). According to Frazier, the tone of the meeting changed when Carr accused Frazier of "being the biggest cell phone user on the job." (Record Document 26 at 11). Frazier responded by saying "that is the biggest lie from the pits of hell Mr. Mike Carr." See id. Carr responded by stating, "[L]et me tell you something right now, don't ever call me a lie [sic] again." Frazier then asked if Carr was threatening him and Carr responded, "yes sir."[2] Jim Pratt ("Pratt") "resolved the matter by sending plaintiff home for the rest of the day with pay." On March 17, 2011, Carr filed a "Threat of Violence Claim against Mike Carr." (Record Document 26 at 13). At a meeting to resolve this claim, the "Executive Director ruled that there was no threat of violence." See id.

---

[1]Frazier attempts to dispute this but admits that "Plaintiffs [sic] are unable to present evidence due to defendants [sic] failure to comply to plaintiff [sic] Motion for Production of Documents." (Record Document 26). These documents were the subject of a Motion to Compel file by Frazier that this Court denied. Accordingly, Frazier's allegation that these numbers are incorrect is not backed by any evidence in the record and are not properly before this Court.

[2]Defendants offer a different verison of this meeting but, for the purposes of this motion only, the Court will accept Frazier's account of the meeting as true.

Frazier also asserts that there were four instances of racial discrimination during his tenure at Sabine. First, Frazier overheard a co-worker named Theresa tell another co-worker "I heard you got that nigger hair." Second, another co-worker named Butch referred to a small town in Sabine Parish called "Negreet" but, according to Frazier, meant "nigger." Third, Frazier was told that another co-worker named Cheryl had used the word "nigger" before. Fourth, Frazier said that a co-worker named Chad made a noose and "made a gesture as though he was going to hang it around [another co-worker's] neck." (Record Document 22-1 at 6-7).

On August 16, 2011, Frazier filed an EEOC charge. A right to sue letter was issued in connection with the charge. (Record Document 22-1 at 2). Frazier filed the above captioned matter on May 23, 2011. He has alleged that he was subjected to retaliation, racial discrimination, and a hostile work environment.

## LAW AND ANALYSIS

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

---

[3]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## Retaliation

In his Amended Complaint, Frazier claims that Sabine retaliated against him "because he had complained about the discrimination against him with his pay rate with respect to a white male worker who never became a classified state worker." Defendants assert that this claim has not been preserved. "Defendants were not put on notice that a retaliation claim was made and such a claim fails to 'reasonably grow out of the charge' executed by Fraizer." (Record Document 22-1 at 9).

In his EEOC charge, under "discrimination based on," Frazier checks the "race" box and not the "retaliation" box. He also checks that it is a "continuing action." In the "particulars" section, Frazier writes the following:

> I was hired by the above-named employer on May 21, 2008 more recently as a Helper earning $8.17 per hour. During my employment, I was subjected to harassment, denied a pay raise and overlooked when work task and assignments were passed out. No reasons were given for the actions taken against me. I believe I have been discriminated because of race, Black [sic] in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Record Document 22-8 at 43). Frazier does not address this issue in his opposition to summary judgment. It does not appear that a retaliation claim is part of the EEOC charge nor that one would reasonably grow out of it and, therefore, this claim is not preserved for trial.

Moreover, "[a] plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996). Frazier's claim for retaliation stems from the March 16, 2011 meeting with Carr. (Record Document 26 at 16). He claims that the "adverse employment action" was that he was threatened by Carr and Pratt. (Record Document 26 at 16). "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007). The accused "threat" that Frazier was subjected to is not an adverse employment action. Therefore, even if this claim was preserved, Frazier cannot meet his *prima facie* burden.[4]

### Race Discrimination

Frazier claims he was subject to racial discrimination because Sebastin, a white male, made a higher salary than Frazier did. "In order to establish a prima facie case of

---

[4]Frazier discusses the existence of a secret recording of the March 16, 2011 meeting. Frazier has refused to turn this tape over to the defendants and, likewise, has not provided it to the Court. Since the Court has not heard what is on this tape, it is not competent summary judgment evidence and cannot be taken into account in this summary judgment proceeding.

discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005).

Frazier offers Sebastin, a white co-worker, as his comparator. "[The Fifth Circuit] require[s] that an employee who proffers a fellow employee as a comparator [to] demonstrate that the employment actions at issue were taken under nearly identical circumstances." Turner v. Kansas City S. Ry. Co., 675 F.3d 887, 895 (5th Cir. 2012). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." See id. All that is in the record on Sebastin is that he is white and was hired in an unclassified position at $10.00 per hour. Various other assertions about Sebastin's work history and experience are not backed by competent summary judgment evidence. Based on the record, Frazier, as the party with the ultimate burden of proof at trial, has failed to assert competent summary judgment evidence that would allow this Court to determine that he and Sebastin had "nearly identical circumstances."

Even if Sebastin, as an unclassified worker, did have "nearly identical circumstances" as Frazier, Frazier was only an unclassified worked for, at most, two and a half months at the very beginning of his career with Sabine. Therefore, Sebastin would only have been a proper comparator before his July 2008 promotion to a classified position. In Louisiana, a plaintiff has 300 days from the alleged discrimination to file an EEOC claim.

See Conner v. Louisiana Dept. of Health & Hospitals, 247 F. App'x 480, 481 (5th Cir. 2007) At the latest, the final act of discrimination alleged was roughly somewhere between July and August of 2008.[5] At the latest, three hundred days from this range would be June of 2009. Frazier filed his EEOC charge on August 16, 2011. Clearly this claim is untimely and therefore has prescribed. Analysis under the Lily Ledbetter Fair Pay Act results in the same outcome. (Record Document 27 at 3-4); See also Smith v. Shinseki, 09-3664, 2010 WL 3909166 (E.D. La. Sept. 27, 2010).

### Hostile Work Environment

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Stewart v. Mississippi Transport Commission, 586 F.3d 321 (5th Cir. 2009) (quoting National R.R. Passenger Corp. V. Morgan, 536 U.S. 101 (2002)). To establish his claim for a hostile work environment, Plaintiff must show that:

> 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts in this Circuit determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the

---

[5]Presumably the last time he received a pay check as an unclassified worker.

degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir.2004). A plaintiff's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir.1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir.1991).

The jurisprudence of this Circuit establishes a very high burden for a plaintiff advancing a claim for a hostile work environment on racial grounds. From this Court's review of the total record, Frazier has failed to meet that burden.

Frazier alleges five instances of harassment in support of his hostile work environment claim. First is the March 16, 2011 meeting, the next three are the aforementioned instances where the word "nigger" was used or alluded to, and finally is the incident involving the noose. To begin, to be probative of a hostile work environment claim, the harassment must be based on race. This requirement eliminates the March 16 meeting from consideration for this claim. It is undisputed that Carr's alleged threat was made in response to Frazier accusing Carr of being a liar. Frazier does not allege that Carr's threat to not "ever call me a lie [sic] again" was based on race at all. In addition to this meeting, the instance where Frazier heard from someone that a co-worker named Cheryl used the

word "nigger" is nothing more than inadmissible hearsay. Therefore this alleged instance of harassment cannot be considered.

With the elimination of these two instances, the alleged harassment the Court is left with are: one instance of Frazier's co-workers uttering a racial epithet; one instance where a co-worker almost uttered a racial epithet; and the incident involving the noose. In regards to the Frazier's co-worker Theresa use of the word "nigger," Frazier admits that he overheard the word and it was not directed at him. Further, soon after Theresa uttered this racial epithet she apologized to Frazier. In regards to the incident involving Butch, Frazier asserts that Butch was discussing the weather in a nearby town called Negreet. However, according to Frazier, "it [referring to the word "nigger"] almost slipped out." (Record Document 22-4 at 38). Frazier does not allege that Butch actually uttered a racial epithet. Finally, in regards to the noose incident, Frazier's co-worker Chad Strouder fashioned a noose and made a gesture as if he was going to place it around a white co-worker's neck. Frazier admitted, "I know they were joking with themselves." (Record Document 22-5 at 4).

In Lindsey v. Chevron USA Inc., 2002 WL 31415255 (5th 2002), the plaintiff brought a hostile work environment claim listing multiple instances of harassment. The Fifth Circuit found that many of the instances listed were not based on race and therefore not probative. The only instances of racial harassment were: (1) the defendant not visiting the plaintiff in the hospital when he did so for white employees; (2) the use of racial epithets; and (3) the hanging of confederate flags by co-workers. The Fifth Circuit held that these three instances were not sufficient to show a hostile work environment. The Fifth Circuit addressed whether the harassment alleged was severe and pervasive so as to affect a term, condition, or privilege of the plaintiff's employment. It was found that these three

instances "do not rise to the requisite degree of severity and pervasiveness that our precedents require." See id. at *4.

> Even viewing the evidence in the light most favorable to [the plaintiff], we cannot assume that the epithets were routine in nature. Further, [the plaintiff] provides no evidence to suggest that these racial slurs, combined with [the defendant's] decision not to visit [the plaintiff] or send him flowers when at the hospital and the hanging of the [confederate] flags, either unreasonably interfered with his work performance or caused him to feel physically threatened or humiliated.

See id.

The only instance in this matter where a clear racial animus was present was Theresa's use of the word "nigger." The other two arguably carried the same animus but the explanations surrounding the incidents tend to show the harassment was not overly severe. These incidents, taken together, do not show an environment at Sabine that a reasonable person would find hostile or abusive. This is especially true considering the most egregious harassment was isolated and immediately followed by an apology. When looking at the surrounding circumstances, the other two instances only amount to, at most: (1) a co-worker *almost* uttering a racial epithet; and (2) a different co-worker fashioning a noose and jokingly threatening another white co-worker with it. These three instances are isolated instances and not routine in nature. They do not evidence severe or pervasive harassment. Further, Frazier does not attempt to show how these incidents affected a term, condition, or privilege of employment. Therefore, Frazier cannot meet his burden in showing that a hostile work environment existed and this claim must be dismissed.

## CONCLUSION

Frazier's retaliation claim was not preserved in his EEOC charge. However, even if it had been, Frazier cannot meet his *primia facie* burden for a retaliation claim. Frazier's race discrimination and hostile work environment claims must also be dismissed as he cannot meet his *prima facie* burden.

Accordingly,

**IT IS ORDERED** that Sabine and the State of Louisiana's Motion for Summary Judgment (Record Document 22) be and hereby is **GRANTED**. All of Frazier's claims against the defendants are dismissed.

The Clerk is ordered to close this matter.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 11th day of June, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE